UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          :
                                  :
*versus*                          :   CRIMINAL NO. 25-133-SDD-SDJ
                                  :
FELIX COC CHOC                    :

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana and the Department of Justice ("the United States"), and Felix Coc Choc ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

### A. THE DEFENDANT'S OBLIGATIONS

#### 1. Guilty Pleas

The defendant agrees to plead guilty to an Indictment charging him with Making a False, Fictitious, and Fraudulent Statement in violation of 18 U.S.C. § 1001(a)(2) (Count One), and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A (Count Two).

#### 2. Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court. Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request. Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

B. **UNITED STATES' OBLIGATIONS**

    1. **Non-prosecution of Charges**

The United States agrees that, if the Court accepts the defendant's guilty pleas, it will not prosecute the defendant, in this district, for any offense related to the offenses charged in the Indictment.

    2. **Motion for Third Point for Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter pleas of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement, including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

C. **SENTENCING**

1. **Maximum Statutory Penalties**

The maximum possible penalty on Count 1 is a term of imprisonment of five years, and a term of supervised release of three years.

The penalty on Count 2 is a mandatory term of imprisonment of two years consecutive to any other term of imprisonment, and a term of supervised release of one year.

In addition to the above, the Court must impose a special assessment of $100 per count which is due at the time of sentencing. The Court may also order restitution.

2. **Supervised Release**

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

3. **Sentencing Guidelines**

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence from the minimum possible penalty up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

4. **No Agreement Regarding Sentencing**

Except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

D. **FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

At the time of the conduct, the United States Department of Health and Human Services ("HHS") was a department within the Executive Branch of the United States government.

Unaccompanied Alien Children ("UACs") were defined as individuals who had no lawful immigration status in the United States, were under the age of 18, and had no parent or legal guardian in the United States who was available to provide care and physical custody.

UACs who were apprehended by the Department of Homeland Security ("DHS") immigration officials or another federal agency were transferred to HHS's Office of Refugee Resettlement ("ORR"), which was responsible for the care and custody of UACs awaiting immigration proceedings.

ORR usually retained custody until the UACs: (1) were released to a parent, guardian, relative, or other qualified sponsor; (2) were transferred to foster care; or (3) turned 18 years old.

The process of releasing a UAC from ORR custody to a sponsor involved several steps, including, but not limited to, the identification of sponsors, the submission of a sponsor application, and an assessment of sponsor suitability, which included verification of the sponsor's identity and relationship (if any) to the child.

All potential sponsors were required to submit a "Family Reunification Application," an "Authorization for Release of Information," and documents that verified the sponsor's identity and relationship claimed between the sponsor and UAC, among other documents. A birth certificate was among a list of acceptable documents to demonstrate the relationship between the sponsor and the UAC, as well as the sponsor's identity.

After submission of the Family Reunification Application, Authorization for Release of Information, and other documents, ORR evaluated the materials, took other assessment

actions, and determined whether an individual was an appropriate sponsor before releasing a child from ORR custody.

Defendant, a Guatemalan national without legal authorization to be present in the U.S., resided in Brusly, Louisiana, in the Middle District of Louisiana.

UAC-1 was a sixteen-year-old male Guatemalan national who illegally entered the United States on or about January 17, 2023. After his apprehension by DHS, UAC-1 was transferred to an HHS-funded care provider on or about January 18, 2023.

Defendant submitted and caused to be submitted to ORR the Spanish version of a Family Reunification Application and an Authorization for Release of Information, both with a signature date of January 18, 2023, seeking to sponsor UAC-1.

In the Family Reunification Application, Defendant made multiple materially false statements, including: Defendant falsely stated that UAC-1 was his brother when in fact there was no familial relation; and Defendant falsely claimed his name was J.C.J., UAC-1's brother who lives in Guatemala.

Defendant signed the Family Reunification Application, which included the following declarations, written in Spanish:

1) "I declare and affirm under penalty of perjury that the information contained in this application is true and accurate to the best of my knowledge."

2) "I attest that all documents I am submitting or copies of those documents are free of error and fraud."

In the Authorization for Release of Information, which Defendant signed under the penalty of perjury, Defendant made at least one materially false statement, including the false claim that his name was J.C.J.

In support of the Family Reunification Application, Defendant provided a copy of J.C.J.'s birth certificate and Guatemalan national identification card, both of which had a photograph of J.C.J.

On or about January 20, 2023, based at least in part on concerns that Defendant's appearance did not match the photos of J.C.J. in the birth certificate and Guatemalan identification card he had submitted to ORR, an employee of the HHS-funded care provider requested that Defendant submit fingerprints.

Felix Coc Choc, Page 6    November 18, 2025

On or about January 21, 2023, the Defendant admitted to an employee of the HHS-funded care provider that he was not IAC-1's brother, and that he had falsely assumed the identity of I.C.J.

Based at least in part on Defendant's false statements, ORR did not approve this initial application to sponsor IAC-1.

On or about January 22, 2023, the Defendant submitted a second application to sponsor (IAC-1) and authorization for release of information in his true name. ORR denied the Defendant's sponsorship application because of the false statements he made in his initial application.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the Defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the Defendant further agree that such facts are sufficient to support conviction of the offenses to which the Defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

E. **BREACH AND ITS CONSEQUENCES**

1. Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this agreement:

a. failing to plead guilty to the charges in the Indictment at re-arraignment;

b. representing, directly or through counsel, to the United States or the Court that he will not plead guilty as charged to the Indictment;

  c. moving to withdraw his guilty plea;

  d. filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

  e. disputing or denying guilt of the offenses to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

  f. providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

  g. violating the terms of this agreement or the supplement to the plea agreement in any other manner.

2. **Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement. In particular, the United States may prosecute the defendant for any criminal offense. In addition, any statements and information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty pleas), and statements made in the course of plea discussions. The defendant expressly

and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel). The defendant is not entitled to withdraw his guilty pleas.

3. **Procedure for Establishing Breach**

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement and the supplement to the plea agreement as a result of a breach by the defendant. After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach. However, the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement or the supplement to the plea agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement or the supplement to the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of his counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

F. **WAIVERS BY THE DEFENDANT**

1. **Waiver of Trial Rights**

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

2. **Waiver of Appeal and Collateral Remedies**

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; and (b) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court. Notwithstanding this

waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

3. **Waiver of Statute of Limitations**

The defendant hereby waives all defenses based on the applicable statutes of limitation as to all offenses charged in the Indictment and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

4. **Waiver of Speedy Trial Rights**

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to all offenses charged in the Indictment. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

G.   **EFFECT OF AGREEMENT**

1.   **Effective Date**

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, his counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

2.   **Effect on Other Agreements**

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court. In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating. The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

3.   **Effect on Other Authorities**

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana and the United States Department of Justice, Criminal Division.

4.   **Effect of Rejection by Court**

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement. If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and

are not binding on the Court. If the Court rejects the plea agreement and the supplement, the defendant will be given the opportunity to withdraw his plea and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw his pleas following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

5. **Impact of Guilty Plea on Immigration Status**

The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if defendant is not a citizen of the United States. Pursuant to 8 U.S.C. § 1227, a broad range of crimes are removable offenses. Because removal and other immigration consequences are the subjects of a separate proceeding, the defendant understands that no one, including the defendant's attorney or the District Court, can predict to a certainty the effect of the defendant's conviction on defendant's immigration status. Defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

## II. REPRESENTATIONS AND SIGNATURES

1. **By The Defendant**

I, Felix Coe Choe, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I

am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Indictment and discussed it with my attorney. I fully understand the nature of the charges, including the elements.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the charges in the Indictment.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

DATE: 1/16/24

Felix Coc Choc
Defendant

2. **By Defense Counsel**

I have read the Indictment and this plea agreement and have discussed both with my client, Felix Coc Choc, who is the defendant in this matter. I am satisfied that the defendant understands the agreement and the charges against him, including the elements. I am also

satisfied that the defendant is entering into the agreement knowingly and voluntarily. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____  DATE: 1/16/26
Andres Gomez
Counsel for Defendant

3. **By the United States**

We accept and agree to this plea agreement on behalf of the United States. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____  DATE: 11-19-25
Kurt Wall
United States Attorney
Middle District of Louisiana

_____  DATE: 11-19-25
Kristen Lundin Craig
Assistant United States Attorney
Middle District of Louisiana

_____  DATE: 11/20/2025
Aaron L. Jennen
Trial Attorney
Department of Justice, Criminal Division
Human Rights and Special Prosecutions Section